(September 21, 1912.)

OTTO A. ALTSCHUL, Appellant, v. CHARLES E. ROGERS, Respondent.

[126 Pac. 1048.]

PROMISSORY NOTE—FRAUD IN PROCURING—BURDEN OF PROOF—SUFFICIENCY OF EVIDENCE.

(Syllabus by the court.)

1. *Held,* that the evidence in this case shows that there was fraud in procuring the promissory note sued on and that it was without consideration, and that when that was shown, the burden of proof shifted to the plaintiff to show that the note was purchased in due course and for a valuable consideration, and without notice of fraud.

2. It was not the intention of Congress in enacting desert land laws to permit desert entries to be made by persons who were to be dummies for others, or by persons who had no intention to reclaim the land but relinquish the same to others to be held temporarily, merely for the purposes of speculation.

3. *Held,* that the instructions state the law applicable to the facts of the case.

APPEAL from the District Court of the Fourth Judicial District for Elmore County. Hon. Edward A. Walters, Judge.

Action to recover on a promissory note. . Judgment for defendant. *Affirmed.*

W. C. Howie, for Appellant.

It is incumbent upon the defendant to establish the fact that the note was taken without consideration or after maturity with notice of infirmities, and not upon the plaintiff to prove the negative.   (*Winter v. Nobs,* 19 Ida. 18, Ann. Cas. 1912C, 302, 112 Pac. 525; *Vaughn v. Johnson,* 20 Ida. 669, 119 Pac. 879; *Park v. Brandt,* 20 Ida. 660, 119 Pac. 877; *Park v. Johnson,* 20 Ida. 548, 119 Pac. 52; *Shellenberger v. Nourse,* 20 Ida. 323, 118 Pac. 508.)

E. M. Wolfe, for Respondent.

The title of the sugar company to this note was defective; it was fraudulently secured from the defendant. The evidence of this was sufficient to shift the burden of proof upon the plaintiff to show that he acquired the note in good faith and for value, without notice of any defects in the title of the company from which he purchased it.

These questions were all submitted to the jury, and there is evidence in the record sufficient to sustain their finding. (*Shellenberger v. Nourse,* 20 Ida. 323, 118 Pac. 508.)

SULLIVAN, J.—This action was brought to recover upon a promissory note executed by the defendant on May 11. 1908, in favor of the Great Western Beet Sugar Co., for $2,200,

with interest at the rate of seven per cent from May 11, 1910. Upon this note there was a credit of $100.

It appears that the defendant had bought a water right from said company for 320 acres of land, for which he was to pay $6,400, or at the rate of $20 per acre. He paid $2,000 in cash and gave two notes for $2,200 each. It appears that he was to secure a relinquishment of a former filing on said 320 acres of land without cost to him, and that he did pay for said relinquishment $100, which payment was allowed him by giving him credit for said $100 on said note.

Upon the issues made by the pleadings the cause was tried by the court with a jury, and the jury returned a verdict in favor of the defendant, upon which verdict a judgment was entered. This appeal is from the judgment.

The defendant Rogers, who was at the time he made said purchase, a resident of Detroit, Mich., came to Mountainhome, where he met Garrett, who was general manager of the Great Western Beet Sugar Co., who took him out over a piece of land which he afterward entered under the desert land laws of Congress, and for which he bought said water right. It appears from the evidence that Garret showed him a ditch which he represented as one that conveyed water to said land, but it in fact did not convey water to the land, as it was not completed to the land, and thereafter the defendant, at an expense to himself of over $700, finished the ditch. At the time said note was given the appellant was engaged in buying and selling water rights from said company and trafficking in relinquishments of filings which had been made under the public land laws of the United States. It appears that Garrett entered into a contract with the plaintiff by which he agreed to pay him $1,680 for a certain desert entry relinquishment. The payments were to be made as Garrett would need the land for locating parties to whom he had sold water rights. As security on this deal the plaintiff exacted from Garrett a water right for 320 acres of land, and in addition to that the note in question. Said desert entry, consisting of 160 acres of land, cost the plaintiff about $100, and shortly after he made the deal Garrett took over 80 acres

of said entry and paid the appellant $550 cash therefor, leaving the other 80 acres still in the control of appellant.

It will be observed from said statement that the appellant had cleared $450 on said deal and had one-half of said land left, as the relinquishment had cost only $100. It also appears that the appellant was familiar with the transaction of said Garrett on behalf of the Great Western Beet Sugar Co. The defendant testified, among other things, as follows: "It was represented to me that at that time there was more water than enough to supply all the water rights that had been sold, and the only question was to get the Camas ditch completed and get it down here. They agreed in the contract to deliver water to my land not later than September of that year (1908). There was no ditch constructed to my land that year. The company never did construct one. I had water in the spring of 1909 once upon about eight or ten acres—just one little corner of an eighty. I had eighty acres in crop. I got water on one corner of it and I got about fifty tons of oat hay off of eighty acres. Five loads of hay cost me about $400 besides the expense of the ditch"; and he further testified he had not been able to get any water since. It also appears that the small amount of water he did receive was after the Great Western Beet Sugar Company had been placed in the hands of a receiver. It appears that said Garrett had sold, prior to May 11, 1908, water for 50,000 acres of land, a part of which had gone back to the company, leaving about 45,000 acres for which water had been sold. It further appears that the capacity of the entire water system belonging to said company was not sufficient to irrigate more than four or five thousand acres of land. The history of that company shows that Garrett, as manager, had, through his false and fraudulent representations, sold water for 45,000 acres of land, when in fact they did not have water for more than four or five thousand acres; that the appellant lived in Mountainhome for many months, and had full information in regard to the transactions of Garrett in selling water rights. He had purchased eight different water rights from Garrett himself and sold seven of them to other people, when there

was no water back of such water rights whatever. He was engaged in trafficking in fraudulent, dry water rights. He was also speculating in relinquishments of filings on public land. He evidently procured persons to make entries who were to be his dummies—procured assignments of the entries from them and held the assignment up until he could make a transfer to some other person. In *Chaplin v. United States,* 193 Fed. 881, in regard to such entries and assignments, the court said: "It was clearly not the intention of Congress to offer desert lands to entry to persons who were to be dummies for others, or to persons who had no intention to occupy the land for the purposes for which it was offered, but whose intention was to hold it temporarily merely for the purposes of speculation or for the benefit of some other person." Such practice, if not criminal, is clearly a fraud upon the government. To permit such a transaction as is shown to have occurred in this case, of getting relinquishments and then holding them up for speculative purposes, is clearly against the spirit and intent of the law. As was held in *Keane v. Brygger,* 160 U. S. 277, 16 Sup. Ct. 278, 40 L. ed. 426, the object of the homestead law was to furnish homes to the citizens of the government and to encourage the settlement of its public domain, and to make the accession of these homes as easy and cheap as possible, and not to wantonly and senselessly place obstructions in the way of such acquisition. The same rule ought to be applied to desert entries when it clearly appears that the entry is made by a person who does not intend to comply with the law, but makes it for the purpose of speculation in the relinquishment of his filing and to prevent others from entering the land.

Appellant had received from Garrett said promissory note as security on a contract out of which he had already netted $450 and still retained one-half of the land involved in the transaction. He knew that said promissory note was given for a water right that never existed, and that a fraud had been perpetrated upon the respondent in order to procure said note, and that no consideration was given for said note. The evidence is amply sufficient to shift the burden of proof upon

the plaintiff to show that he acquired the note in good faith and for value without notice of any defects in the title of the company from which he purchased it.   (*Shellenberger v. Nourse,* 20 Ida. 323, 118 Pac. 508.)

The entire case was submitted to the jury on the evidence, and we think the evidence is sufficient to sustain the verdict.

Some question is raised as to the sufficiency of the instructions given by the court to the jury.   Under the facts of this case we are satisfied that the instructions state the law and that the court did not err in giving them.

The judgment is affirmed, with costs in favor of the respondent.

Stewart, C. J., and Ailshie, J., concur.